# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3067
_____

| | | |
|---|---|---|
| Lisa Howard, | * | |
| | * | |
| Plaintiff-Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| Coventry Health Care, of Iowa, Inc.; | * | |
| Principal Financial Group, Inc.; | * | [TO BE PUBLISHED] |
| Principal Mutual Life Insurance | * | |
| Company, also known as Principal | * | |
| Life Insurance Company, | * | |
| | * | |
| Defendants-Appellees. | * | |

_____

Submitted: April 18, 2002

Filed: June 7, 2002
_____

Before BOWMAN, LAY, and MORRIS SHEPPARD ARNOLD, Circuit Judges.
_____


PER CURIAM.


Lisa Howard filed suit in Iowa District Court for Polk County against Coventry Health Care of Iowa, Inc.; Principal Financial Group, Inc.; and Principal Mutual a/k/a Principal Life Insurance Company for tortious breach of statute in violation of the Women's Health and Cancer Rights Act ("WHCRA"), 29 U.S.C. § 1185b. She also

filed pendent state claims of breach of contract, violation of public policy, and bad faith. Defendants removed the case to federal district court and filed motions to dismiss. The district court[1] granted the motions. Howard appeals, claiming the WHCRA establishes a common law cause of action and the Employee Retirement Income Security Act ("ERISA") does not preempt Iowa bad faith law. We affirm on the well-reasoned opinion of the district court.[2]

## I.

In 1993, Howard was diagnosed with breast cancer and had a double mastectomy. Temporary expanders were placed in her chest as part of her reconstructive surgery. In 1994, the expanders were replaced with saline implants. A few months later, due to medical complications, the saline implants were removed and tissue expanders were again inserted. On January 1, 1995, Howard's contract for health insurance with Coventry Health Care of Iowa, Inc. ("Coventry") became effective. The health insurance plan is provided through Howard's employer. In1995, Howard had the expanders replaced with textured anatomical saline implants at the Mayo Clinic. In 1998, Howard learned she had developed capsular contracture from her breast implants. A month later, she had the implants removed and had tissue expanders reinserted.

Howard's reconstructive surgeons at Mayo recommended the McGahn anatomical silicone implant, which is only available through selected doctors, none of whom are members of Coventry's system. Howard received approval from

---

[1]The Honorable Ronald E. Longstaff, Chief Judge, United States District Court for the Southern District of Iowa, presiding.

[2]This suit was brought originally as a class action. However, the district court did not certify the class and, as did the district court, we need only address the claims in Ms. Howard's name.

Coventry to have the implants placed in her chest in St. Louis, Missouri. She had to cancel this appointment because of unrelated medical problems. Howard later learned these implants were available in St. Cloud, Minnesota, which is closer to her home. Howard sought approval for reconstructive surgery in St. Cloud, which Coventry rejected.

## II.

WHCRA

On a motion to dismiss, a court will accept as true all factual allegations in the complaint. Leatherman v. Tarrant Co. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993). The motion will be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." Connelly v. Gibson, 355 U.S. 41, 45-46 (1957); see also Smith v. St. Bernards Regional Medical Center, 19 F.3d 1254, 1255 (8th Cir. 1994); Quartana v. Utterback, 789 F.2d 1297, 1301 (8th Cir. 1986).

The passage of the WHCRA amended provisions of the Public Health Service Act and ERISA. Women's Health and Cancer Rights Act of 1998, Pub. L. 105-277, Title IX, § 903, 112 Stat. Howard relies upon 29 U.S.C. § 1185b, which amended provisions in ERISA. Id.

Howard denies that her plan falls under ERISA or that her claims are brought under ERISA. An ERISA plan is:

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or

otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment . . . .

29 U.S.C. § 1002(1). As defined by the act, however, the plan provided by her employer is clearly an ERISA plan. See id.

Howard, however, argues that the factors set forth in Cort v. Ash, 422 U.S. 66, 78 (1975), require us to hold that § 1185b of the WHCRA provides a private cause of action for her tortious breach claim. The factors in Cort, 422 U.S. at 78 (internal citations and quotations omitted), are:

First, is the plaintiff one of the class for whose *especial* benefit the statute was enacted . . . ; [s]econd, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one; [t]hird is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff; [a]nd finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

The parties agree that two factors support Howard's contention: Section 1185b was enacted for the benefit of breast cancer patients who require reconstructive surgery following mastectomies and Howard is part of this class, and it is undisputed there is no state law impediment to applying such a remedy in accord with the fourth Cort factor.

The remaining Cort factors, however, weigh heavily in favor of finding no cause of action was implied. The legislative history of WHCRA demonstrates it was "intended to 'ban drive-through mastectomies' and to require that insurance plans cover the costs of breast reconstruction surgeries." Howard v. Coventry Health Care of Iowa, Inc., 158 F. Supp. 2d 937, 941 n.6 (S.D. Iowa 2001) (citing Women's Health

and Cancer Rights Act, 1998 WL 235685 (Cong. Rec.), 144 Cong. Rec. S4644-01 at *S4646 (May 12, 1998)).  Thus, we conclude legislative history does not illustrate an intent to create a private cause of action in addition to those already available under ERISA.  See Cort, 422 U.S. at 78; see also Cannon v. Univ. of Chicago, 441 U.S. 677, 688 (1979) ("[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person.").  Moreover, the very nature of ERISA--a comprehensive remedial scheme-- shows Congress did not intend to create a private, independent cause of action.  See Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 146 (1985) (quoting Nachman Corp. v. Pension Benefit Guar. Corp., 446 U.S. 359, 361 (1980) ("The six carefully integrated civil enforcement provisions found in § 502(a) [29 U.S.C. § 1132] of the statute as finally enacted, however, provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly.  The assumption of inadvertent omission is rendered especially suspect upon close consideration of ERISA's interlocking, interrelated, and interdependent remedial scheme, which is in turn part of a 'comprehensive and reticulated statute.'").

In conclusion, the Cort factors dictate that the WHCRA did not create a private cause of action, which would enable Howard to maintain her action for tortious breach of a statute.

## III.

Howard also contends that under Pegram v. Herdich, 530 U.S. 211 (2000), her claim could not fall under ERISA because it relates to "quality of care."  Pegram addresses an issue not before this court: ERISA actions in the context of claims for breach of duties by plan fiduciaries.  See id. at 237.  Moreover, Pegram did not hold that all quality of care claims exist outside the scope of ERISA or support Howard's

contention of a cause of action outside of ERISA. <u>See</u> 29 U.S.C. § 1132. Thus, <u>Pegram</u> does not support Howard's claim.

**IV.**

<u>Preemption</u>

The second issue is whether Howard's state law claims of breach of contract, violation of public policy, and bad faith are preempted by ERISA. Howard's state law claims are preempted if the claims "relate to" an employee benefit plan. 29 U.S.C. § 1144(a). The claims relate to an employee benefit plan covered by ERISA if it "[1] has a connection with or [2] reference to such a plan." <u>California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.</u>, 519 U.S. 316, 324 (1997) (internal quotation and citation omitted). "This court has held that a variety of tests are helpful when determining the effect of state law on an ERISA plan." <u>Johnston v. Paul Revere Life Ins. Co.</u>, 241 F.3d 623, 630 (8th Cir. 2001). One such test was set forth in <u>Prudential Ins. Co. of Am. v. Nat'l Park Med. Ctr., Inc.</u>, 154 F.3d 812, 822 (8th Cir. 1998): a claim relates to an ERISA plan when it "premises a cause of action on the existence of an ERISA plan. . . ."

Reducing Howard's complaint to its core--that the ERISA plan entitled her to a particular set of breast implants and Coventry failed to provide them--demonstrates her causes of action for breach of contract and violation of public policy are preempted. <u>See id.</u>; <u>see also</u> 29 U.S.C. § 1332 (setting forth the integrated civil enforcement provisions of ERISA); <u>Molasky v. Principal Mut. Life Ins. Co.</u>, 149 F.3d 881, 884 (8th Cir. 1998) (stating claim for breach of contract is preempted).

In addition, Howard's claim for bad faith, which is only a declaration that "a breach of that contract may in certain circumstances allow the policyholder to obtain punitive damages," <u>see</u> <u>Pilot Life Ins. Co. v. Dedeaux</u>, 481 U.S. 41, 51 (1987), also

is dependent upon proving a breach of the ERISA plan. See Prudential Ins. Co. of Am., 154 F.3d at 822. All of Howard's claims "relate to" an employee benefit plan; therefore, we hold the causes of action are preempted. See 29 U.S.C. § 1144(a).

Howard argues that even if her bad faith claim relates to an ERISA plan, the claim is still maintainable because it "regulates insurance." See 29 U.S.C. § 1144(b)(2)(A). The Supreme Court espoused that a state law regulates insurance under a "common-sense view of the matter," UNUM Life Ins. Co. of Am. v. Ward, 526 U.S. 358, 367 (1999) (internal quotation and citation omitted), or if it falls within the reference to the business of insurance in the McCarran-Ferguson Act, 15 U.S.C. § 1011 et seq. Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 742-43 (1985). The McCarran-Ferguson Act sets forth three factors to determine this: "'*first*, whether the practice has the effect of transferring or spreading a policyholder's risk; *second*, whether the practice is an integral part of the policy relationship between the insurer and the insured; and *third*, whether the practice is limited to entities within the insurance industry.'" Id. at 743 (citing Union Labor Life Ins. Co. v. Pireno, 458 U.S. 119, 129 (1982)).

In addressing the common-sense test, the court in Dedeaux, 481 U.S. at 50, held the claim "must not just have an impact on the insurance industry, but must be specifically directed toward that industry." The courts of Iowa have routinely upheld an award of punitive damages, which is the footprint of a claim for bad faith, see id. at 49, in cases outside the confines of the business of insurance. See, e.g., White v. Northwestern Bell Tel. Co., 514 N.W.2d 70, 77 (Iowa 1994) (stating punitive damages may be awarded for a breach of contract upon proving: "(1) that the breach also constitutes an intentional tort, and (2) that the breach was committed maliciously . . ." in a manner contemplated by Iowa statute); Hockenberg Equip. Co. v. Hockenberg's Equip. & Supply Co. of Des Moines, Inc., 510 N.W.2d 153, 156-57 (Iowa 1994) (upholding an award for punitive damages in a breach of contract case between competing suppliers of restaurant equipment); Meyer v. Nottger, 241

N.W.2d 911, 922 (Iowa 1976) (stating "[exemplary] damages are allowable upon a showing of legal malice, which may be established by demonstrating wrongful or illegal conduct committed or continued with a willful or reckless disregard of another's rights" within the context of a suit brought against a mortician); Syester v. Banta, 133 N.W.2d 666, 667 (Iowa 1965) (holding an award of $40,000 for exemplary damages in a suit by an elderly woman against a man who sold dancing lessons was not an abuse of the jury's discretion); see also Dedeaux, 481 U.S. at 50 (holding the Mississippi law of bad faith, which clearly had an impact on the insurance industry, is not specifically directed toward that industry). Thus, we hold Howard's claim does not pass the common-sense test.

Examined in light of the McCarran-Ferguson factors, Iowa's law of bad faith does not regulate insurance. Iowa law does not dictate what bargains the insurer and insured may or may not reach; rather, it merely provides the insured with an extra remedy to insure the insured receives the benefit of its bargain. The law of bad faith does not effect a spreading of policyholder risk or define the terms of the relationship between the insurer and the insured. See id. at 50-51. Further, as explained above, see, e.g., White, 514 N.W.2d at 77, it is not specifically directed toward the insurance industry. Therefore, as in Dedeaux, none of the McCarran-Ferguson factors merit holding that Iowa's law of bad faith regulates insurance and is thereby saved under 29 U.S.C. § 1144(b)(2)(A).

## CONCLUSION

We hold that a private cause of action as contemplated by Cort v. Ash, supra, is not created under 29 U.S.C. § 1185b. Howard's remaining claims are preempted by ERISA and her claim for bad faith is not saved under 29 U.S.C. § 1144(b)(2)(A).

Judgment affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.