# United States Court of Appeals
## For the First Circuit

No. 01-2313

MARJORIE HOTZ,

Plaintiff, Appellant,

v.

BLUE CROSS and BLUE SHIELD OF MASSACHUSETTS, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, Jr., U.S. District Judge]

Before

Boudin, Chief Judge,

Selya and Lipez, Circuit Judges.

Thomas J. Lynch with whom Lynch Associates, LLC was on brief for appellant.
Joseph D. Halpern, Blue Cross and Blue Shield of Massachusetts, Inc., Law Department, with whom Sara A. Walker was on brief for appellee.

June 11, 2002

BOUDIN, Chief Judge.  In March 2001, Marjorie Hotz brought suit in state court against her health insurer, Blue Cross and Blue Shield of Massachusetts ("Blue Cross").  Hotz claimed that Blue Cross violated a state law prohibiting unfair claim settlement practices by insurance companies, see Mass. Gen. Laws ch. 176D, § 3(9) (2000), when it waited nearly three months before approving payment for a course of follow-up therapy recommended by her physician after the removal of her cancerous tonsil.  Hotz alleged that Blue Cross's delay caused her condition to worsen and sued under Mass. Gen. Laws ch. 93A, § 9(1) (2000), which was amended in 1979 to extend its private remedies provisions to violations of chapter 176D, § 3(9) (2000).[1]

Hotz's insurance coverage with Blue Cross was part of an employee benefit plan offered and paid for by the law firm where she worked; the plan is governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. (2000).  Blue Cross removed the case to federal district court, claiming federal question jurisdiction based on ERISA; it then moved to dismiss on the ground that Hotz's chapter 93A claim fell within ERISA's clause preempting all state laws that "relate to" employee benefit plans, id. § 1144(a).

---

[1]See Hopkins v. Liberty Mut. Ins. Co., 750 N.E.2d 943, 949-50 (Mass. 2001); Van Dyke v. St. Paul Fire & Marine Ins. Co., 448 N.E.2d 357, 360 (Mass. 1983). Chapter 93A is a well-known Massachusetts statute that permits private actions for multiple damages and attorney's fees for a broad class of "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Mass. Gen. Laws ch. 93A, § 2(a).  Blue Cross asserts that it is not engaged in trade or commerce but we do not reach that issue.

The district court denied Hotz's motion to remand and granted Blue Cross's motion to dismiss, and Hotz now appeals. As required, we assume for this purpose the truth of her factual allegations. Martin v. Applied Cellular Tech., Inc., 284 F.3d 1, 5-6 (1st Cir. 2002). This is so even though Blue Cross asserts that, if the case were tried, it would show that no undue delay occurred because it approved the treatment requested within 48 hours after it received the relevant request. Our review, which is addressed to questions of law, is de novo. Id.

Hotz presses two points on appeal. First, at the threshold, she argues that the district court lacked removal jurisdiction over her state law claim. Second, she argues that her claim is not preempted because it falls under the so-called "saving clause" exempting from ERISA's preemption provision any state law that "regulates insurance." 29 U.S.C. § 1144(b)(2)(A). We address these issues in the same order and conclude that they are largely governed by existing case law.

Normally, federal defenses including preemption do not by themselves confer federal jurisdiction over a well-pleaded complaint alleging only violations of state law. Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 9-10, 25-27 (1983). But under the doctrine of "complete preemption," ERISA's civil enforcement provisions, 29 U.S.C. § 1132(a), have been interpreted to establish federal removal jurisdiction over any state law claims that in substance seek relief that is otherwise within the scope of those ERISA remedy

provisions.  See Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63-67 (1987).  Pertinently, ERISA permits a federal action by a beneficiary "to recover benefits due . . . under the terms of [the] plan, to enforce . . . rights under the terms of the plan, or to clarify . . . rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).

Hotz denies that her claim involves a "benefit" as the term is used in ERISA; she says that "benefit" means only the benefit offered directly by the employer to its employees (i.e., coverage under the employer's group insurance policy) and not the benefit provided by the insurance company to the employee (i.e., payment for medical services) pursuant to the employer's policy. Although the distinction is linguistically possible, it would mean that numerous past ERISA suits brought to secure payment for medical services from third-party providers under ERISA plans lacked a legal basis.[2]

In any event, Hotz's argument is foreclosed by this court's previous opinion in Danca v. Private Health Care Systems, Inc., 185 F.3d 1 (1st Cir. 1999).  There, we found removal jurisdiction over plaintiff's state tort claim alleging that the defendant insurer was negligent when it approved treatment at a mental hospital different from the hospital recommended by the referring physician.  Relying on Pilot Life Insurance Co. v.

_____

[2]E.g., I.V. Servs. of Am., Inc. v. Inn Dev. & Mgmt., Inc., 182 F.3d 51, 53 (1st Cir. 1999); Bernstein v. Capitalcare, Inc., 70 F.3d 783, 784 (4th Cir. 1995); Farley v. Benefit Trust Life Ins. Co., 979 F.2d 653, 658 (8th Cir. 1992).

-4-

Dedeaux, 481 U.S. 41 (1987), we said the claim fell within the ambit of 29 U.S.C. § 1132(a)(1)(B) because it challenged "the process used to assess a participant's claim for a benefit payment under the plan." 185 F.3d at 6. This ruling governs Hotz's claim against the insurer alleging undue delay in processing her physician's referral. See also Pryzbowski v. U.S. Healthcare, Inc., 245 F.3d 266, 273-74 (3d Cir. 2001).

We turn, then, to the question of preemption. Hotz concedes that if what Blue Cross promises to provide is deemed a plan benefit, then her state law claim falls at least initially within 29 U.S.C. § 1144(a). That section broadly preempts any state law claim that "relate[s] to" an employee benefit plan, and it has been applied widely to bar state claims seeking damages for alleged breach of obligations pertaining to an ERISA plan. E.g., Pilot Life, 481 U.S. at 47-48. Hotz's answer is that section 1144(b)'s saving clause preserves her claim as one brought under a state law that "regulates insurance." 29 U.S.C. § 1144(b)(2)(A).

The Supreme Court has used several formulas to delineate the scope of the saving clause. In a trilogy of cases, it has asked whether the state law regulates insurance under a "common-sense view" of the term and, separately, whether the practice falls within the phrase "business of insurance" for purposes of the McCarran-Ferguson Act based on three more technical factors.[3] Finally, in one of the cases, it has separately asked whether

---

[3]UNUM Life Ins. Co. of Am. v. Ward, 526 U.S. 358, 367-68 (1999) (citing Pilot Life, 481 U.S. at 48-49, and Metro. Life Ins. Co. v. Massachusetts, 471 U.S. 724, 740, 743 (1985)).

allowing the state-created rule to govern would interfere with the uniform remedial scheme established by ERISA itself for securing plan benefits.  Pilot Life, 481 U.S. at 51-57.

Much of the emphasis in the trilogy is on whether the claim or rule invoked by the plaintiff is exclusive to insurance regulation; in UNUM Life, the Court's decision not to find preemption turned principally on the fact that the state rule (involving failure to give notice) was unique to insurance cases. 526 U.S. at 370-71; see also Pilot Life, 481 U.S. at 50-51; Metro. Life, 471 U.S. at 742-43.  The underlying notion is that a claim or rule directed only to insurance is one that "regulates insurance" while one that regulates insurance along with everything else is not within the quoted phrase.

Exclusivity is an ambiguous label in this case.  The substantive prohibition on delay in claim processing in chapter 176D is directed solely at the insurance industry, but the private action for multiple damages and attorney's fees claim brought by Hotz is created by chapter 93A, § 9, which applies to unfair commercial practices in any industry.  Yet looking through form to substance, chapter 176D, § 3, invoked by Hotz, is (by its own terms) merely a specification of particular "unfair methods of competition and unfair or deceptive acts or practices"--which are banned in more general terms, and for all industries, in chapter 93A (see note 1, above).

On balance, our case seems closer to Pilot Life, where the Court held to be preempted a punitive damages tort claim for

-6-

egregious nonpayment of benefits under an insurance policy.  Under state law, such punitive damages were also available for egregious violations of contracts unrelated to insurance, just as chapter 93A is available for non-insurance unfair trade practices.  In addition, the Court in Pilot Life--quite apart from the "common-sense view" and McCarran-Ferguson tests--emphasized that to allow punitive damages for failure to pay benefits was at odds with Congress's refusal to allow punitive damages for benefit claims under ERISA.  481 U.S. at 53-54.

On this last rationale, other circuits have in a number of cases held claims under various state statutes similar to Massachusetts' to be preempted by ERISA despite the saving clause.[4] Possibly UNUM Life betokens a shift of emphasis by the Supreme Court; plainly the law as to the scope of the saving clause is still evolving.  But under current Supreme Court precedent, we feel bound by the similarity of Pilot Life to our own case and by the close fit of its final rationale to Hotz's chapter 93A claim.

Affirmed.

---

[4]Ramirez v. Inter-Cont'l Hotels, 890 F.2d 760, 763-64 (5th Cir. 1989) (Texas unfair insurance practices statute); Kanne v. Conn. Gen. Life Ins. Co., 867 F.2d 489, 494 (9th Cir. 1988), cert. denied, 492 U.S. 906 (1989) (California unfair insurance practices statute); In re Life Ins. Co. of N. Am., 857 F.2d 1190, 1194-95 (8th Cir. 1988) (Missouri statute prohibiting vexatious refusal to pay insurance benefits); see also Custer v. Pan Am. Life Ins. Co., 12 F.3d 410, 420 (4th Cir. 1993) (West Virginia unfair trade practices statute); Anschultz v. Conn. Gen. Life Ins. Co., 850 F.2d 1467, 1468-69 (11th Cir. 1988) (Florida insurance statute).