**Sheryl Serreze DESROSIERS,**
**Plaintiff,**

v.

**HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, a Connecticut Corporation, Defendant.**

**No. C.A. 03–018–L.**

United States District Court,
D. Rhode Island.

Jan. 27, 2005.

---

4. *See also*, Motion in Opposition (docket No. 29); Reply (docket No. 34), and Response to

Reply (docket No. 37).

Christopher M. Lefebvre, Law Offices of Claude Lefebvre & Sons, Pawtucket, RI, Jordan M. Lewis, Esq., Siegel, Brill, Greupner, Duffy & Foster, P.A., Philadelphia, PA, S. Carolina Africano, Westport, MA, for Plaintiff.

Mark A. Pogue, Mark W. Freel, Edwards & Angell, Providence, RI, for Defendant.

## DECISION AND ORDER

LAGUEUX, Senior District Judge.

This case is before the Court on Defendant's Motion for Summary Judgment on both counts of Plaintiff's Complaint. Plaintiff's Complaint sounds in Rhode Island law, and alleges (1) that Defendant's failure to pay her long-term disability insurance claim represents a breach of its contract with her; and (2) that the breach is a violation of Rhode Island General Laws § 9–1–33, which provides a cause of action against an insurer who wrongfully and in bad faith refuses to settle or pay a claim. Defendant seeks judgment on Plaintiff's Complaint on the ground that the insurance plan in question is governed by federal ERISA law which preempts Plaintiff's state law claims. To cover all bases, Plaintiff has made a Motion to Amend her Complaint to add an ERISA count.

The parties to this litigation are Plaintiff Sheryl Serreze Desrosiers (hereinafter "Desrosiers" or Plaintiff), a former employee of the United States Trustee Program; and Hartford Life and Accident Insurance Company (hereinafter "Hartford" or Defendant), a Connecticut insurance company which underwrote the long term disability insurance policy.

For the reasons that follow, the Court determines that the insurance plan is governed by ERISA and that, therefore, Hartford is entitled to summary judgment on the two state law claims in Plaintiff's original complaint. The Court determines further that Plaintiff will be permitted to amend her Complaint to add the ERISA count, and the case will proceed as an ERISA case.

### Background

In 1995, Plaintiff began working for the United States Trustee Program of the United States Bankruptcy Court, as the

Attorney–in–Charge of the Rhode Island office. As a result of her employment status, she was able to enroll in the Federal Employees Long Term Disability Plan, offered to some federal employees through an entity known as the Department of Justice Recreation Association.

In April 1999, Plaintiff suffered a serious head injury when she was struck by a car door suddenly opened in her path. A month later, Plaintiff fractured her skull in a second accident at a playground. Plaintiff returned to work part time and then full time, before suffering a third injury when she fell down the stairs at her home on December 8, 1999. At that point, Plaintiff stopped working.

Plaintiff submitted her claim to Hartford for insurance benefits on December 30, 1999. Plaintiff's misfortunes were compounded when her health maintenance organization filed for receivership on December 31, 1999.

Hartford made no determination on Plaintiff's claim for several months, during which time her financial situation worsened. On June 1, 2000, Plaintiff attempted to return to work part time. On June 14, 2000, her neurologist ordered her to stop working entirely because of worsening headaches, back pain and dizziness.

On August 11, 2000, Hartford denied Plaintiff's claim for benefits based on its determination that she was able to perform the essential functions of her job. Plaintiff requested reconsideration and then appealed, as provided by the insurance policy, to no avail. This lawsuit was filed in Rhode Island Superior Court in November 2002. It was removed by Defendant to this Court on January 10, 2003, based on the diversity of citizenship of the parties, pursuant to 28 U.S.C. § 1332.

 Defendant now raises federal preemption, arguing that the insurance plan is "an employee welfare benefit plan" as that term is defined by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 et seq. If the long-term disability insurance plan is indeed governed by ERISA, then, as Defendant asserts, Plaintiff's state law claims are preempted by federal ERISA law and must be dismissed. The First Circuit in *Danca v. Private Health Care Systems, Inc.*, 185 F.3d 1, 4 (1st Cir.1999), in analyzing removal jurisdictional powers, described ERISA as "an area of federal law for which Congress intended a particularly powerful preemptive sweep." As this Court has previously noted in *Morris v. Highmark Life Insurance Company*, "the complete preemption doctrine applies to a state law suit alleging bad faith and breach of contract for the improper processing of a benefits claim under an ERISA plan." 255 F.Supp.2d 16, 20 (D.R.I.2003).

A determination of ERISA preemption hinges on whether the disability insurance plan here constitutes an employee welfare benefit plan. Consequently, it is necessary to examine the plan, as well as the entity that provided the plan to Plaintiff: the Department of Justice Recreation Association.

### The Department of Justice Recreation Association

The Department of Justice Recreation Association (hereinafter "the DJRA") is a private, for-profit corporation, formed to sponsor recreational activities for employees of the United States Department of Justice. In addition to its recreational functions, such as group travel activities and a bowling league, the DJRA operates a retail store in Washington, D.C., where it sells caps and T-shirts with Justice Department logos to the general public (DJRA members receive a discount), and it offers group long-term disability insurance to all Department of Justice employees. This coverage is called the Federal Employee Group Long Term Disability plan

(hereinafter "FEGLTD" or "the Plan"). The Plan is underwritten by Hartford.

The Plan is open to all employees of the Justice Department, regardless of whether or not they are members of the DJRA. Enrollees in the Plan pay premiums to Hartford through payroll deductions coordinated by the DJRA with the Department of Justice, and the DJRA keeps a portion of that deduction to cover its administrative costs and make a profit. The Department of Justice makes no contribution to the Plan; premiums are paid in total by the employees.

The DJRA was not created by the Department of Justice, nor by any other governmental agency or political subdivision. It pays income taxes to the federal government, and to the District of Columbia. It is governed by a board of directors, and it employs a small staff to carry out its daily operations. These staff members are private employees, and are not employed by the federal or any state government. No government funds comprise any part of DJRA's budget or operations.

The question that is presented to the Court at this juncture in the present litigation is: Does the aggregate of facts dictate that this plan is "an employee welfare benefit plan" as that phrase is defined by 29 U.S.C. § 1002, and, if so, are issues concerning the FEGLTD plan governed by ERISA rather than state law?

## Legal Analysis

### Summary Judgment Standard of Review

When ruling on a motion for summary judgment, the court must look to the record and view all the facts and inferences therefrom in the light most favorable to the nonmoving party. *Continental Casualty Co. v. Canadian Universal Ins. Co.*, 924 F.2d 370, 373 (1st Cir.1991). Once this is done, Federal Rule of Civil Procedure 56(c) requires that summary judgment be granted if there is no issue as to any material fact and the moving party is entitled to judgment as a matter of law. A material fact is one affecting the lawsuit's outcome. *URI Cogeneration Partners L.P. v. Board of Governors for Higher Education*, 915 F.Supp. 1267, 1279 (D.R.I. 1996). Factual disputes are genuine when, based on the evidence presented, a reasonable trier of fact could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

To win summary judgment on a particular count of the complaint, the moving party must show that "there is an absence of evidence to support" the nonmoving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In response, the nonmoving party cannot rest on its pleadings, but must "set forth specific facts demonstrating that there is a genuine issue for trial" as to the claim that is the subject of the summary judgment motion. *Oliver v. Digital Equipment Corp.*, 846 F.2d 103, 105 (1st Cir.1988).

In the present dispute, the analysis differs slightly. While Defendant's motion may be dispositive of Plaintiff's claims, the motion does not address the substance of Plaintiff's claims, and does not concern the elements of her prima facie case. Plaintiff has presented the Court with few facts concerning the Plan and the DJRA; in part because, as she explains in her affidavit, the DJRA was not forthcoming in providing her with the information she sought. Nonetheless, Plaintiff has failed to provide the Court with a Statement of Disputed Facts as required by Local Rule 12.1. Accordingly, the Court accepts the facts as delineated by Defendant in its Statement of Undisputed Facts. The First Circuit has made it clear that parties ignore local

rules at their own peril. *Ruiz Rivera v. Riley*, 209 F.3d 24, 28 (1st Cir.2000).

### The Employee Retirement Income Security Act

An employee benefit plan under ERISA includes an employee welfare benefit plan, an employee pension benefit plan, or a plan which is both. 29 U.S.C. § 1002(3). The first kind of plan is at issue in this case. The statute defines the term as follows:

> The terms "employee welfare benefit plan" and "welfare plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services ...

29 U.S.C. § 1002(1).

For purposes of this case, the key language in this section is: "established or maintained by an employer or by an employee organization ... " The parties concur that the Plan was not established or maintained by Plaintiff's employer; rather, it was established and maintained by the DJRA. To determine if the DJRA is an employee organization, the Court turns again to the definition section of the statute:

> (4) The term "employee organization" means any labor union or any organization of any kind, or any agency or employee representation committee, association, group, or plan, in which employees participate and which exists for the pur-

pose, in whole or in part, of dealing with employers concerning an employee benefit plan, or other matters incidental to employment relationships; *or any employees' beneficiary association organized for the purpose in whole or in part, of establishing such a plan.* (emphasis added).

29 U.S.C. § 1002(4).

Many pages might be devoted to analyzing the DJRA to determine the extent of its employee participation, whether it exists for the purpose of dealing with employers concerning the Plan, etc. However, in the interest of plotting a course that most resembles the straightest and shortest distance between two points, this Court will set aside the analysis of whether the DJRA is an employee organization—and go directly to an analysis of the final phrase of the statute's definition. The Court holds that the DJRA conforms to the definition of an "employees' beneficiary association organized for the purpose in whole or in part, of establishing such a plan."

### Employees' Beneficiary Association

ERISA does not include a definition of employees' beneficiary association and there is little case law interpreting the phrase. However, the Department of Labor, in a series of opinion letters, has developed a test pertinent to this inquiry. Concerning the legal weight to be accorded to such opinion letters, the Supreme Court has written, "... [I]nterpretations contained in formats such as opinion letters are 'entitled to respect' under our decision in *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944), but only to the extent that those interpretations have the 'power to persuade,' *ibid.*" *Christensen v. Harris County*, 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000). The United States District Court for the Eastern Dis-

trict of Louisiana found the Department of Labor's opinion letters on this subject to be "informative and persuasive," in *Fierro v. Commercial Life Insurance Company*, 2000 WL 1808502 (E.D.La.). Likewise, the District Court for the Central District of California relied on the Department of Labor's definition for employees' beneficiary association, calling it "a persuasive explanation of the statutory language," in *Hanson v. United Life Insurance Company*, 2001 WL 1388260 (C.D.Cal.). The Department of Labor criteria are also cited in *Couch on Insurance*, 1 Couch on Ins. § 7:25, which explains that the Department of Labor initially developed the checklist to determine the status of employees' beneficiary associations under the Welfare and Pension Plans Disclosure Act ("WPPDA"), 20 U.S.C. § 302 (1970). In 1995, Congress repealed the WPPDA and enacted ERISA; however, the Department of Labor has continued to rely on the same definition for employees' beneficiary association. 1 Couch on Ins. § 7:25, fn. 6; see also *Bell v. Employee Security Benefit Association*, 437 F.Supp. 382, 395 (D.Kan. 1977).

Persuaded by the logic and pedigree of the Department of Labor's four-part test, this Court hereby adopts the test, comprised of the following checklist that must be established in order to find that an employees' beneficiary association exists:

1) membership in the association is conditioned on employment status, for example, membership is limited to employees of a certain employer or union;

2) the association has a formal organization, with officers, by-laws or other indications of formality;

3) the association is organized for the purpose, in whole or in part, of establishing a welfare or pension plan; and

4) the association generally does not deal with employers.

ERISA Op. Letter No. 89–20A, 1989 WL 206424 (August 18, 1989); ERISA Op. Letter No. 95–25A, 1995 WL 582729 (October 3, 1995).

Membership in the DJRA, as well as eligibility for insurance under the insurance Plan, is limited to employees of the Department of Justice, thereby meeting the first criterion. As for the second criterion, the DJRA has a formal organization, including a board of directors. One of its primary functions is to administer the long-term disability plan for its members, as specified by the third criterion. And, finally, the DJRA does not generally deal with the Department of Justice. The DJRA's contact with the Department of Justice is limited to its role in coordinating the payroll deduction for premium payments to Hartford.

Therefore this Court concludes that the DJRA is an employees' beneficiary association in accordance with the criteria established by the Department of Labor. Consequently, it is "an employee organization," as defined by 29 U.S.C. § 1002(4), and the Plan is "an employee welfare benefit plan," as defined by 29 U.S.C. § 1002(1), and governed by ERISA.

### Shelter in a Safe Harbor?

Plaintiff asserts that even if the Plan meets the definition of an employee welfare benefit plan, it evades ERISA governance because it is sheltered by a regulatory safe harbor set forth in 29 C.F.R. 2510.3–1(j).

As explained above, for an employee welfare benefit plan to come within the purview of ERISA, it must be established or maintained by an employer or employee organization. 29 U.S.C. § 1002(1). In response to this requirement, the Secretary of Labor has promulgated a safe harbor regulation describing how an employer or employee organization may be involved

with an employee welfare benefit plan without being deemed to have "established or maintained" it. *Johnson v. Watts Regulator Co.*, 63 F.3d 1129, 1133 (1st Cir. 1995). To moor in this safe harbor, the employee welfare benefit plan must conform to the following guidelines:

1) No contributions are made by an employer or employee organization;

2) Participation in the program is completely voluntary for employees or members;

3) The sole functions of the employer or employee organization with respect to the plan are, without endorsing the plan, to permit the insurer to publicize the plan to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and

4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

*Johnson*, 63 F.3d at 1133. Defendant concedes that the Plan passes the first two parts of the four-part test: the Plan receives no contribution from the employer or the DJRA, and it is completely voluntary. However, Defendant disputes Plaintiff's assertion that the Plan also conforms to parts three and four of the test.

■ Plaintiff maintains that the DJRA does not endorse the Plan; it merely serves as a conduit to permit Defendant to market its insurance policy to Department of Justice employees. This issue was addressed by the First Circuit in *Johnson v. Watts Regulator Co., ibid.* In that case, plaintiff's employer offered the plan, and the Court focused on the degree of neutrality communicated by the employer to its employees in describing the plan. The

question examined by the *Johnson* Court is whether a reasonable employee would think that the plan was part of a benefit arrangement established or maintained by the employer, or employee organization. 63 F.3d at 1134. "In short," the Johnson Court wrote, "the agency [the Department of Labor] has suggested that the employees' viewpoint should constitute the principal frame of reference in determining whether endorsement occurred." 63 F.3d at 1134. Elaborating on the notion of endorsement, the Department of Labor has noted that, "An employee organization will be considered to have endorsed a group or group-type insurance program if the employee organization expresses to its members any positive, normative judgment regarding the program." ERISA Op. Letter No. 94–26A, 1994 WL 369282 (July 11, 1994).

To explore the issue of what a reasonable Department of Justice employee would have thought about the extent of the DJRA's endorsement of the long-term disability insurance Plan, this writer must review two memoranda sent to Department of Justice employees by Arthur C. Smith, III, president of the DJRA. (One is dated March 1995, and the other, which came second, is undated). The first memo reads:

The Department of Justice Recreation Association (DJRA) is pleased to introduce a voluntary long term disability income protection plan for all Department of Justice (DOJ) employees, including all GS/GM–1811 Criminal Investigators. Employees of all Bureaus, Offices, Boards and Divisions of the Department of Justice are invited to enroll in the plan.

This plan is designed to protect your most valuable asset, your income, in the event of a disabling illness or accident. Employees of the Federal Government

do not have a voluntary long term disability plan that is sponsored by the Federal Government. Therefore, the DJRA has worked diligently over the past year to develop and sponsor a voluntary plan for all DOJ employees.

The memo goes on to outline some of the details of the Plan. The second memo, disseminated towards the end of the open enrollment period, repeats much of the same information and ends with the following exhortation:

This is a great plan and one that every DOJ employee should take advantage of. If you haven't already enrolled in the FEGLTD program you need to act quickly to take advantage of the open enrollment period. Call the FEGLTD plan administrator at [phone number provided] today.

This Court determines that the DJRA's language is definitely positive and normative regarding the Plan; the DJRA is promoting the Plan. Furthermore, the DJRA's role in "diligently" developing the Plan and negotiating the terms of the coverage with Hartford, as described by Mr. Smith in his affidavit and alluded to in his memo to the employees, indicates a level of involvement consistent with sponsorship or endorsement.

The DJRA's violation of the fourth prong of the neutrality test is similarly irrefutable. The fourth part of the test requires that the DJRA receive no consideration or compensation for its involvement in the Plan, beyond the amount that would cover its administrative costs. In fact, Mr. Smith has stated in his affidavit, and it is undisputed by Plaintiff, that the DJRA receives 13 cents per enrollee per pay period, which results in a profit.

Because the DJRA does not conform to the four-part test specified in the safe harbor regulation, 29 C.F.R. § 2510.3–1(j), this Court holds that the DJRA has established and maintained the employee welfare benefit plan at issue here, and that it is governed by ERISA.

### ERISA Preemption

In a recent case with some similarities to this one, *Morris v. Highmark Life Insurance Company*, 255 F.Supp.2d 16 (D.R.I.2003), this Court held that the ERISA statute preempted plaintiff's breach of contract and bad faith claims, brought under Rhode Island law, against the defendant insurer which had failed to pay long-term disability insurance benefits. Now, in light of a new decision from the United States Supreme Court, *Kentucky Association of Health Plans, Inc. v. Miller*, 538 U.S. 329, 123 S.Ct. 1471, 155 L.Ed.2d 468 (2003), the Plaintiff urges the Court to revisit its analysis.

The new Supreme Court decision establishes a revised analysis for the ERISA's savings clause, 29 U.S.C. § 1144(b)(2)(A). *Kentucky Assn.*, 538 U.S. at 341–342, 123 S.Ct. 1471. The savings clause "saves" state laws which regulate insurance from the broad sweep of ERISA preemption set forth in § 1144(a). In interpreting the savings clause, courts have in the past turned to interpretations of the McCarran–Ferguson Act, 15 U.S.C. § 1011, which accords to the various states the power to regulate the business of insurance. In *Morris v. Highmark Life Ins. Co.*, 255 F.Supp.2d at 24, this Court ruled that ERISA preempted Rhode Island's bad faith statute using that standard.

However, in *Kentucky Association of Health Plans*, the Supreme Court states,

Today we make a clean break from the McCarran–Ferguson factors and hold that for a state law to be deemed a "law ... which regulates insurance" under § 1144(b)(2)(A), it must satisfy two requirements. First, the state law must be specifically directed toward entities engaged in insurance. [cites omitted]. Second, as explained above, the state

law must substantially affect the risk pooling arrangement between the insurer and the insured.

*Kentucky Assn. of Health Plans*, 538 U.S. at 341–342, 123 S.Ct. 1471.

■ While the tests are different, their inherent concepts are much the same, and this Court concludes that under both tests, the outcome is the same—Rhode Island's bad faith statute is preempted by ERISA.

In *Morris*, this writer first applied a "common sense" test to reach the conclusion that the bad faith statute did not "regulate insurance," because the statute's roots are in common law tort and contract law. 255 F.Supp.2d at 24. The second half of the *Morris* test has three parts: 1) whether the state law has the effect of spreading the policyholder's risk; 2) whether the state law constitutes an integral part of the policy relationship between the insurer and the insured; and 3) whether the law is limited to entities within the insurance industry. 255 F.Supp.2d at 24, (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 48–49, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987)).

The undersigned determined in *Morris* that the bad faith statute did not spread the policyholders' risk, nor did it constitute an integral part of the policy relationship between the insurer and the insured. 255 F.Supp.2d at 25.

The third prong of the test, whether the statute is limited to entities within the insurance industry, was satisfied, as the statute in question is titled "Insurer's bad faith refusal to pay a claim made under any insurance policy." R.I.G.L. § 9–1–33. However, as this Court pointed out, "Nevertheless, the mere fact that the word 'insurance' appears in the title does not support the conclusion that the Rhode Island statute regulates the business of insurance under the McCarran–Ferguson Act." *Morris*, 255 F.Supp.2d at 25. Conse-

quently, this Court concluded that the statute was preempted by ERISA.

The first part of the new Supreme Court standard requires only that the state law be "specifically directed toward entities engaged in insurance," effectively reiterating the last *Morris* point. *Kentucky Assn.*, 538 U.S. 329, 123 S.Ct. 1471. As noted, the Rhode Island statute is limited to claims brought against an insurer pursuant to any insurance policy. It is clear that the statute is directed towards entities engaged in insurance.

However, the Supreme Court in *Kentucky Association of Health Plans* stresses the importance of the second part of its test:

> We emphasize that conditions on the right to engage in the business of insurance must also substantially affect the risk pooling arrangement between the insurer and the insured to be covered by ERISA's savings clause. Otherwise, any state law aimed at insurance companies could be deemed a law that 'regulates insurance,' contrary to our interpretation of § 1144(b)(2)(A) in *Rush Prudential*, 536 U.S., at 364[, 122 S.Ct. 2151].

*Kentucky Assn.*, 538 U.S. at 338, 123 S.Ct. 1471. Therefore, the fact that the statute has the word "insurance" in its title, which limits its application to entities within the insurance industry, is insufficient to support a holding that the statute regulates the business of insurance under either the 'old' *Morris* test or the 'new' *Kentucky Association* test.

Taking up the second threshold of the Supreme Court's new test, this Court must now determine whether the Rhode Island bad faith statute "substantially affect[s] the risk pooling arrangement between insurer and the insured." *Kentucky Assn.*, 538 U.S. at 342, 123 S.Ct. 1471. In *Morris*, this Court wrote, "A bad faith law

does not bring about a 'change in the risk borne by insurers and the insured, because it does not affect the substantive terms of the insurance contract.' [citing *Gaylor v. John Hancock Mut. Life Ins. Co.,* 112 F.3d 460, 466 (10th Cir.1997).] There is simply no indication that an insurance bad faith statute intends for any risk of medical care to be shared." 255 F.Supp.2d 16, 25. The Court continues to comfortably stand on this reasoning to declare that the Rhode Island bad faith statute does not substantially affect the risk pooling arrangement between the insurer and the insured. The Rhode Island bad faith statute was preempted by ERISA when this Court decided *Morris,* and it remains preempted by ERISA today.

### Plaintiff's Motion to Amend the Complaint

■ Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, Plaintiff has moved to amend her Complaint to add a single count, claiming benefits under ERISA. Rule 15(a) states that when twenty days have elapsed following service of the complaint, the complaint may only be amended with the court's permission, with such leave to "be freely given when justice so requires." F.R.C.P. 15(a). The First Circuit has explained that the ruling on a motion to amend is within the discretion of the trial court, "but amendments under the rule are liberally granted, and some justification is required for a refusal." *Ondis v. Barrows,* 538 F.2d 904, 909 (1st Cir.1976). Defendant does not object to the amendment if its motion is granted to eliminate the state law claims. Accordingly, Plaintiff's Motion to Amend her Complaint is hereby granted.

### Conclusion

For the reasons stated above, the Court grants Defendant's Motion for Summary Judgment on Plaintiff's Complaint and also grants Plaintiff's Motion for Leave to Amend the Complaint to state an ERISA claim. This case will be converted into an ERISA case and proceed as such. No judgments shall enter until the ERISA claim is resolved.

It is so ordered.