Paul FICI and Anthony P. Boremi, Plaintiffs

v.

LUCENT TECHNOLOGIES INC., et al., Defendants.

Civil Action No. 02–CV–10536 RCL.

United States District Court, D. Massachusetts.

Sept. 10, 2008.

Thomas G. Moukawsher, Moukawsher & Walsh, LLC, Hartford, CT, Mala M. Rafik, Rosenfeld & Rafik, PC, Boston, MA, for Plaintiffs.

Terence H. McGuire, Evan J. Spelfogel, Epstein Becker & Green, P.C., New York, NY, Christopher Novello, Foley & Lardner LLP, Boston, MA, for Defendants.

ORDER ON REPORT AND RECOMMENDATION

YOUNG, District Judge.

Order entered approving Report and Recommendations. Summary Judgment allowed. Judgment shall enter for the defendants.

## REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR DISMISSAL *(Docket # 173)*

ALEXANDER, United States Magistrate Judge.

On March 22, 2002, Plaintiffs Paul Fici and Anthony P. Boremi (collectively, "Plaintiffs") sued their former employer, Lucent Technologies Inc. ("Lucent")[1], for breach of fiduciary duty under ERISA[2] §§ 502(a)(1)(B)[3] & (a)(3)[4]. Plaintiffs contend that Lucent breached its fiduciary duty by misrepresenting information and failing to disclose terms regarding a series of early retirement packages offered in mid to late 2001. Having elected early retirement in April and July 2001, Plaintiffs seek to recover the benefits of a more advantageous benefits package offered in September 2001.

Lucent now moves for summary judgment or dismissal contending, among other

1. Plaintiffs have brought this action in connection with their separation from Lucent Technologies Inc. As former Lucent employees and former participants in the following plans, Plaintiffs also name the Lucent Technologies Pension Plan, Lucent Technologies Inc. Life Insurance Plans, Lucent Technologies Inc. Long Term Care Insurance Plan, Lucent Technologies Inc. Medical Expense Plan, Lucent Technologies Inc. Dental Expense Plan and Lucent Technologies Long Term Savings and Security Plan as defendants. Collectively, the plans and former employer are referred to as "Lucent."

2. The Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*

3. ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) provides that a civil action may be brought by a beneficiary or participant to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

4. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) provides that a civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

things, that Plaintiffs failed to establish the existence of an "ERISA plan." After reviewing the parties' submissions [5], holding a hearing on the motion, and for the reasons detailed below, this Court concurs and RECOMMENDS that Lucent's motion for summary judgement be ALLOWED.

**Factual Background**

Fici and Boremi worked for Lucent at the Merrimack Valley Works ("Merrimack Valley") manufacturing facility in North Andover, Massachusetts until 2001. Plaintiffs were members of the collective bargaining unit represented by the Communication Workers of America union ("CWA"). In early 2001, Lucent made known that it wished to outsource and subcontract much of the work performed at the Merrimack Valley facility. Lucent soon began negotiations with local branches of the CWA to discuss the fate of the Merrimack Valley

employees—mainly the severance benefits to be offered in connection with anticipated work force reductions. The talks resulted in a Memorandum of Agreement ("MOA") that enhanced an existing early retirement benefits package (i.e. voluntary) known as the Lucent Career Transition Option Program ("LCTOP"). In addition, the fifth paragraph of the MOA included a summary of the benefits enumerated and reserved for involuntarily terminated employees.[6] In effect, paragraph five of the MOA ("Paragraph Five")[7] provided for a more generous benefits scheme than that allotted to individuals electing early retirement or another form of voluntary separation under the enhanced LCTOP provision of the MOA.[8]

As a way of advising employees of their enhanced LCTOP eligibility and informing them of voluntary separation options, Lucent sent two letters aimed at inducing selection of early retirement. Both the

---

5. In addition to Lucent's Memorandum in Support of Defendant's Motion for Summary Judgment ("Lucent's Summ. Judg. Mem.") and Plaintiffs' Brief Opposing Dismissal or Summary Judgment ("Plaintiffs' Summ. Judg. Opp'n Mem."), this Court considers Lucent's Reply Memorandum in Support of Defendant's Motion for Summary Judgment or Dismissal ("Lucent's Reply to Opp'n Mem."), and Plaintiffs' Surreply in Support of their Brief Opposing Dismissal or Summary Judgment ("Plaintiffs' Surreply").

6. The enhanced LCTOP benefits were only available to those eligible employees who elected to *voluntarily* end employment with Lucent in the event of a work force surplus. In contrast, the benefits referred to in the fifth paragraph of the MOA were only available to qualifying employees *involuntarily* terminated.

7. The Paragraph Five benefits were: a) a five year age and service credit for pension plan eligibility, b) a one-time Social Security reduction reimbursement related to early retirement, c) a one-time lump sum benefit equal to (depending on years of service) up to 234% of an employee's annual pay, d) a one-time lump

sum transition payment of $3,400, e) continuation of health insurance for one year and certain life insurance and accidental death and dismemberment insurance benefits for six months, f) an education/training/out-placement or relocation benefit, worth up to $5,000, and g) early vesting of an employee's long term savings and security plan benefits. Lucent's Summ. Judg. Mem., 4–5 (quoting Exhibit A; Plaintiff's Second Amended Complaint, ¶ 27 ("Complaint"); Sheila Landers' Affidavit dated April 12, 2004, ¶ 7 ("Landers Aff.").)

8. Paragraph four of the MOA modified the LCTOP benefits. The MOA increased the maximum payment available from $30,500 to $40,000 for employees who *volunteered* to terminate employment under the LCTOP. In addition to the lump sum, eligible employees were given separation options such as the Special Leave Program, Optional Termination Pay, Extended Compensation Option, and/or Transition Leave of Absence. Lucent's Summ. Judg. Mem., 3 (quoting Landers Aff. ¶ 3).

April 2, 2001, and July 12, 2001, letters offered eligible Merrimack Valley employees the LCTOP early retirement package enhanced by paragraph four of the MOA. However, neither letter disclosed information about the Paragraph Five benefits for involuntarily terminated employees. More than 500 eligible employees, including Plaintiffs, accepted early retirement upon receipt of the April and July letters. Lucent eliminated the remaining surplus, amounting to hundreds of other employees, by means of involuntary termination in reverse order of seniority. Accordingly, these individuals received the more substantial Paragraph Five benefits.

On September 25, 2001, after reaching a special agreement with the CWA, Lucent sent a third letter to all remaining Merrimack Valley employees. Pursuant to the new agreement, Paragraph Five benefits replaced the enhanced LCTOP benefits across the board. This time, unlike in April and July, even employees electing to leave voluntarily would receive the Paragraph Five benefits previously available only to employees involuntarily terminated. In response to this offer, over 1,200 eligible employees voluntarily ended their employment in September.

As discussed, although Lucent prepared and transmitted letters to Merrimack Valley employees in April and July highlighting the enhanced LCTOP benefits, it did not disclose the terms of the MOA concerning the Paragraph Five benefits until the September offer. Plaintiffs, who opted for early retirement in April and July, contend that had Lucent informed them of the Paragraph Five benefits at the time they made their retirement decisions, neither would have chosen to voluntarily separate. Plaintiffs assert that had they remained employed, they would have received Paragraph Five benefits either by involuntary termination in April or July or by voluntary separation after the revised September offer.

## Standard of Review

Summary Judgment is appropriate when "the pleadings, affidavits, admissions, answers to interrogatories, and other materials, viewed in the light most favorable to the nonmoving party, reveal no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Bacou Dalloz USA, Inc. v. Cont'l Polymers, Inc.*, 344 F.3d 22, 26 (1st Cir.2003); Fed.R.Civ.P. 56. In order for summary judgment to be granted on a particular count, the moving party must show that "there is an absence of evidence to support" the nonmoving party's claim. *Desrosiers v. Hartford Life & Acc. Ins. Co.*, 354 F.Supp.2d 119, 123 (D.R.I.2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The nonmoving party cannot rest on its pleadings in response to the motion for summary judgment but must "set forth specific facts demonstrating that there is a genuine issue for trial" as to the claim that is the subject of the summary judgment motion. *Id.* (quoting *Oliver v. Digital Equip. Corp.*, 846 F.2d 103, 105 (1st Cir. 1988)). "[C]onclusory allegations, improbable inferences, and unsupported speculation" are insufficient to establish a genuine dispute of fact. *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990).

## Analysis

Plaintiffs raise their claims under ERISA §§ 404 and 502, alleging Lucent breached its fiduciary duty by violating the prescribed standard of care[9]. In order for

---

**9.** If the claim is proper, ERISA §§ 502(a)(1)(B), 29 U.S.C. 1132 § (a)(1)(B) and 502(a)(3), 29 U.S.C. 1132 § (a)(3) authorize Plaintiffs' civil action against Lucent for allegedly breaching its fiduciary duty by violating the standard of prudent care prescribed by ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).

Plaintiffs to sue Lucent for failing to comply with an ERISA mandate, Plaintiffs must establish that an ERISA plan exists. *See* ERISA § 502(a)(1)(B). Thus, in order to determine if Plaintiffs have an ERISA claim, this Court must first determine if the LCTOP as modified by the MOA, or the MOA itself, are ERISA plans. Quite simply, in the words of United States District Judge Woodlock, "if there is no ERISA 'plan', there is no ERISA claim." *White v. Bell Atl. Yellow Pages,* No. 01–10157–DPW, 2004 U.S. Dist. WL 594957, at *7 (D.Mass. Mar. 23, 2004).

█ ERISA defines a plan as a "an employee welfare benefit plan or an employee pension benefit plan," or a plan which is both. *See* ERISA § 3(3) [10]; *see also White,* 2004 WL 594957, at *7. The Supreme Court clarified this rhetorical definition in *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987), by holding that an employee benefit package is an ERISA plan only if its "provision by nature requires an ongoing administrative program to meet the employer's obligation." *Id.* at 11, 107 S.Ct. 2211. The First Circuit applied the *Fort Halifax* test to benefit plans at issue in *Belanger v. Wyman–Gordon Co.,* 71 F.3d 451 (1st Cir.1995) *modified on other grounds, Rodowicz v. Mass. Mut. Life Ins. Co.,* 195 F.3d 65 (1st Cir.1999), *Rodowicz v. Mass. Mut. Life Ins. Co.,* 192 F.3d 162 (1st Cir.1999), and *O'Connor v. Comm. Gas Co.,* 251 F.3d 262 (1st Cir.2001) ("*O'Connor II* "). Given the similarities between the enhanced LCTOP and Paragraph Five severance benefits of the MOA and those benefits analyzed in the aforementioned cases, a brief examination of these First Circuit precedents is particularly instructive.

In *Belanger,* a group of employees who accepted "capped offer-Offer No. 3–as an inducement to take early retirement," sued their former employer after learning that "Offer No. 4" embodied far more generous terms. 71 F.3d at 453. The *Belanger* plaintiffs alleged that the series of offers constituted an ERISA plan, that the plan fell short of ERISA's mandates, and that the shortcomings entitled plaintiffs to damages based on what they would have received had "Offer No. 3" not been capped. *Id.* United States District Court Judge Gorton concluded that ERISA did not apply and entered judgment for the employer. *Id.* at 455. On appeal, Judge Selya of the First Circuit upheld Judge Gorton's conclusion stating that "[n]othing in the offers, whether they are assessed individually or in the aggregate, reflects the company's assumption of an ongoing administrative or financial obligation to its employees within the purview of *Fort Halifax.*" *Id.*

Four years later, plaintiff retirees in *Rodowicz* appealed United States District Judge Ponsor's dismissal of a similar ERISA claim filed against their former employer. 192 F.3d at 166. The *Rodowicz* plaintiffs alleged their employer violated ERISA when it failed to inform them, at the time of their retirement, that a more favorable retirement package was forthcoming. *Id.* The First Circuit affirmed the District Court's dismissal holding that a one-time lump sum severance payment did not require the sort of long term financial commitment or administrative burden and expense contemplated by the Supreme Court in establishing the *Fort Halifax* test. *Id.* at 171.

In 2001, the First Circuit in *O'Connor II* again declined to conclude that ERISA applied to a benefits package that consisted of several components. *O'Connor II,* 251 F.3d at 264. Even though the plan included various provisions such as a sev-

---

**10.**  ERISA § 3(3), 29 U.S.C. § 1002(3).

erance bonus, educational assistance, and a pension credit, the court found that at its core, the package was a "take-it-or-leave-it incentive" that did not create an ongoing administrative burden. *Id.* at 266–67.

Analogizing to and drawing heavily from the principles articulated in both *O'Connor II* and *Rodowicz,* Lucent contends summary judgment is appropriate given that the LCTOP, as modified by the MOA, and the MOA itself, are not ERISA plans. As support for its position, Lucent asserts that the administration of the enhanced LCTOP benefits, and lack of discretionary decision making in the present case, closely resembles the four part retirement plan held not to constitute an ERISA plan in *Belanger,* 71 F.3d at 455. Specifically, the *Belanger* court found that "[t]he offers pivoted on a single, time-specific event, . . . did not involve promises that had to be kept over a lengthy period, [and t]he bottom line [wa]s that the company did no more than propose to write a single check to each eligible employee who accepted early retirement offer." *Id.*

■ This Court is persuaded by Lucent's position that Fici and Boremi's April and July acceptances required that company perform a purely mechanical calculation of benefits due under the enhanced LCTOP provision of the MOA. Just as in *Belanger,* Lucent's offer "hinged on a purely mechanical determination of eligibility and, if accepted, required no complicated administrative apparatus either to calculate or to distribute the promised benefit." *Id., compare Simas v. Quaker Fabric Corp.,* 6 F.3d 849, 853 (1st Cir.1993) (Boudin, J.) (holding that a prolonged time period, the requirement of individualized decisions, and at least one criterion that is far from mechanical, was sufficient to justify a conclusion that an ERISA plan existed), *Bogue v. Ampex Corp.,* 976 F.2d 1319, 1321–23 (9th Cir.1992) (holding that a severance pay plan, contingent upon a deter-

mination of whether executives were not offered "substantially equivalent employment," constituted an ERISA plan because it required a case-by-case analysis and "the program, by its own terms, required the sort of discretionary decision-making by the plan's administrator that is the hallmark of an ERISA plan").

At the summary judgment hearing, Plaintiffs attempted to dispel the *O'Connor II* parallels. Mainly, Plaintiffs contended that the enhanced LCTOP and Paragraph 5 benefits are distinguishable from the *O'Connor II* retirement package in that they require a lengthier administration time, and that, while a severance bonus is included in both packages, it was not the central component. In drawing this distinction, Plaintiffs rely on the assertion that the four-part early retirement incentive package in *O'Connor II* was not held to be an ERISA plan solely because "the severance bonus was the meat and potatoes of the [early retirement package]" and the length of time required for administration was insufficient to justify an ERISA plan finding. *O'Connor II,* 251 F.3d at 267. For these reasons, Plaintiffs insisted during the hearing that *Simas,* rather than *O'Connor II,* controlled.

However, Plaintiffs overlook the fundamental turning point in *Simas:* discretion in the allocation and administration of the plan benefits. In holding that certain Massachusetts statutory obligations created an ERISA plan, the *Simas* court primarily rested its decision on the existence of an ongoing administrative mechanism that required the employer to make individualized determinations about the eligibility of each discharged employee. *Id.* at 853. Prior to approving allocation of the benefits, the employer in *Simas* had to determine whether the employee was discharged within the various statutory periods, whether the employee was discharged "for cause," and whether the employee was

otherwise ineligible under Massachusetts law. *Id.* Specifically, "the 'for cause' determination ... [wa]s likely to provoke controversy and call for judgments based on information well beyond the employee's date of hiring and termination[,]" such that the requisite ongoing administrative obligations undoubtedly fell within the *Fort Halifax* definition of an ERISA plan. *Id.*

The decision to allocate the MOA benefits in the instant matter does not implicate the employer's discretion in the same way as was true in *Simas.* Upon deciding to retire in April and July, Plaintiffs were systematically awarded benefits pursuant to the terms of the MOA. Hence, Lucent's administrative obligations were contingent upon an employee's acceptance. To the extent that Plaintiffs contend the ERISA plan in *Simas* is analogous to the retirement and severance packages of the MOA, this Court disagrees and concludes that the decision in *O'Connor II* guides this Court's determination.

Plaintiffs' papers [11] cite to the Tenth Circuit's decision in *Felix v. Lucent Techs.,* *Inc.* to persuade this Court to find that an ERISA plan exists. 387 F.3d 1146, 1158 (10th Cir.2004) (holding that ERISA did not completely preempt former employees from bringing state law fraud claims against Lucent). However, as Lucent correctly surmises, Plaintiffs err in presuming that Lucent's argument in *Felix,* that ERISA completely preempted former employee's state law claims in that litigation, supports a finding that an ERISA plan exists in this case.

The *Felix* court was concerned with whether an Oklahoma law "relates to" an ERISA plan for purposes of ERISA preemption. *Id.* at 1153–54. Additionally, the court explicitly indicates that it was not making an ERISA plan determination as "the parties ... d[id] not dispute that [d]efendant's pension plan at issue [wa]s covered by ERISA." *Id.* The present case before this Court does not concern preemption and the parties indeed dispute whether or not an ERISA plan exists.

Finally, any lingering reservations concerning the Court's posture in the instant

---

11. Plaintiffs preface their legal argument by refreshing this Court's memory of Lucent's alleged actions during the outsourcing that took place in early to late 2001. Plaintiffs accuse Lucent of engaging in over three years of secretive maneuvers, prior to 2001, aimed at rapidly downsizing its workforce under the guise of unforeseen "surplus" eliminations. Plaintiffs ask this Court to infer that Lucent knew the job cuts at Merrimack Valley were not remedies for short-term unfavorable business conditions, but rather part of the company's global business decision to outsource its manufacturing whereby Lucent would either have to terminate its Merrimack Valley employees or induce them to voluntarily separate.

Considering that the fifth paragraph of the MOA afforded terminated employees much greater benefits than those who voluntarily separated, it is quite perspicuous that Lucent undoubtably stood to gain, or at least stood to avoid greater loss, by inducing voluntary separation rather than commencing widespread involuntarily termination orders. Plaintiffs contend that because Lucent did not want to provide all of the "surplus" employees Paragraph Five benefits, Lucent withheld information regarding the existence of Paragraph Five benefits and deceived employees by suggesting that they take the enhanced LCTOP offer before the Merrimack Valley plant closed down or Lucent became unable to offer any benefits at all. Plaintiffs allege that had they known that this was not true, they would not have left when they did, and as a result, insist they would have been generously compensated under the Paragraph Five benefits package offered in September.

However, this Court does not reach a factual determination regarding the motivations behind Lucent's work force reductions, nor does it reach a conclusion about the alleged misrepresentations. As explained in more detail below, the aforementioned determinations, as well as any findings of law, are only before this Court if it has been established that ERISA plan exists.

matter are erased by Judge Woodlock's 2005 decision in *White*. Judge Woodlock's conclusion, that the benefits plan in *White* was "not an ERISA plan and therefore ... the fiduciary duties of ERISA [did] not [attach] to the alleged misrepresentation[,]" heavily influences this Court's analysis of the present matter. *White,* 2004 WL 594957, at *9.

In 2001, six former employees ("plaintiffs") sued their former employer, Bell Atlantic Yellow Pages ("Bell"), under ERISA and various state laws. *Id.* at *1. The plaintiffs claimed that Bell induced them to accept an early retirement offer by misrepresenting the company's plans to offer future retirement plans. *Id.* Having accepted the initial early retirement packages, plaintiffs sought to recover the benefits of the more advantageous plan offered after their separation.

Much like the circumstances surrounding Lucent's April and July workforce reductions, "[Bell] and the union negotiated a Force Adjustment Plan ('FAP') ... designed to provide [Bell] with a mechanism to eliminate its 'surplus force conditions' by offering a retirement incentive called 'FAP Special Pension.'" *Id.* at *1. Once Bell declared a surplus, "the process by which an employee bec[ame] eligible for benefits [was] utterly mechanical, based purely on the timing of birthdays and service anniversaries." *Id.* at *9. Similarly, after declaring a surplus and offering the

enhanced LCTOP in April and July 2001, Lucent was left with little more to do but await notification of employees' acceptances. Upon notice of participation in the enhanced LCTOP, Lucent calculated benefits based on age and years of service and began cutting checks.

Additionally, Judge Woodlock indicated that "the FAP itself [was] best described as simply that portion of the [collective bargaining agreement with the union] that states when the FAP Special Pension will be offered; the FAP Special Pension, in turn, simply act[ed] as a lump-sum grant of age and service credit that may be plugged into the existing plan." *Id.* By way of analogy, the MOA in the instant matter states when the enhanced LCTOP will be offered [12], and in turn, the enhanced LCTOP acts as a lump-sum grant of age and service credit that is purely objective and mechanical in its application.

Alternately, Lucent offers additional grounds for summary judgment dismissal in the event that this Court found an ERISA plan existed. While Plaintiffs reject these asseverations and attempt to minimize the applicability of supporting case law Lucent cites, in the absence of an ERISA plan, serious discussion of the alternate summary judgment arguments is premature. Existence of an ERISA plan presupposes any further analysis of the ERISA claim. Nonetheless, Plaintiff's surreply, disputing Lucent's position [13],

---

**12.** It deserves mention that the Plaintiffs did have to meet eligibility requirements in order to be offered the enhanced LCTOP benefits. However, "that there is a process involved in deciding to offer a particular benefit does not necessarily mean that the benefit will be part of an ERISA plan; the exercise of discretion which will indicate an ERISA plan is in the operation of the plan itself, not in deciding to offer a benefit." *Williamson v. GTE Prods. Corp.,* 955 F.Supp. 364, 372–73 (M.D.Pa. 1997) (holding that voluntary reduction lump-sum severance pay and other benefits offered

to retirement eligible employees was not employee benefit plan subject to ERISA because no new administrative scheme was created) (emphasis added).

**13.** Lucent utilizes its Reply to Plaintiff's Opposition Memo to assert that Plaintiffs refuse to demonstrate why claims do not fail at inception in the absence of an ERISA plan. Furthermore, Lucent contends that Plaintiffs unabashedly utilize their opposition memorandum to: 1) change facts from the second amended Complaint, 2) add accusations of fraud which were previously disavowed and

that the heightened pleading standard under Federal Rule of Civil Procedure 9(b) applies, warrants mention. Fed.R.Civ.P. 9 ("the circumstances constituting fraud or mistake shall be stated with particularly").

Plaintiffs assert that the notice pleading requirements of Rule 8(a) control in circumstances where a fiduciary breach under ERISA is alleged. *See In re Boston Sci. Corp. ERISA Litig.,* 506 F.Supp.2d 73, 77 (D.Mass.2007) (Tauro, J.) (indicating that the "appropriate pleading standard for alleging breaches of fiduciary duty in ... [an] ERISA case is the notice pleading requirements of Fed.R.Civ.P. 8(a) ... [and p]laintiffs' complaint satisfies this lenient standard, both in terms of notice and with regard to stating a claim").[14]

■ Plaintiffs correctly asseverate that the notice pleading requirements of Rule 8(a) govern instead of the heightened threshold Lucent urges for. *See id.* at 77("appropriate pleading standard for alleging breaches of fiduciary duty in ... [an] ERISA case is the notice pleading requirements of Fed.R.Civ.P. 8(a)"), *see also Stein v. Smith,* 270 F.Supp.2d 157, 166 (D.Mass.2003) (Lindsay, J.). However, formally addressing the issue is premature given that Plaintiffs' notice pleading argument is premised on the fact that an ERISA plan exists.

Regardless of the pleading requirement, at the very least, the elements of the ERISA cause of action must be satisfied before a claim may be brought. *See Rodowicz,* 192 F.3d at 172 (upholding United States District Judge Ponsor's dismissal of

ERISA-based claims on summary judgment in absence of ERISA plan). Unless Plaintiffs can satisfy the bare minimum requirement for establishing a cause of action, other pleading requirements are irrelevant.

Likewise, the sustainability of the other issues related to the ERISA claim, articulated by both sides for the purposes of the summary judgment motion and hearing, need not be reached. Plaintiffs, having failed to establish that an ERISA *plan* exists, a fortiori, fail to establish that any genuine issue of material fact exists with respect to the ERISA *claim. See White,* 2004 WL 594957, at *7, *Belanger,* 71 F.3d at 456.

### Conclusion

For the reasons explained above, Plaintiffs' claims fail the *Fort Halifax* test. First Circuit and District Court case law provides overwhelming support for this Court's conclusion. Plaintiffs' reliance on *Simas* overlooks the missing requirement of employer discretion, and their contention that *Felix* stands for the proposition that the LCTOP and MOA are ERISA plans is a misapplication and misconstruction of Tenth Circuit case law.

Accordingly, this Court FINDS that Plaintiffs have failed, as a matter of law, to demonstrate that the LCTOP or the MOA (the enhanced LCTOP provision and the Paragraph Five provision) are 'plans' for the purposes of ERISA. Having failed to establish that an ERISA plan exists, Plaintiffs' ERISA claim cannot proceed and all

are presently pleaded with insufficient particularity, 3) erroneously analogize class certification rulings to findings regarding the merits of the case, and 4) clutter the docket with recapitulations of legal actions Lucent has been a party to that have no bearing on or any relationship to the matter at hand.

**14.** Plaintiffs further explain that although their case "sounds in fraud," just as it did in

*Boston Sci. Corp.,* it is a breach of fiduciary duty claim that does not require compliance with Rule 9(b). *Boston Sci. Corp.,* 506 F.Supp.2d at 77 (noting that while the ERISA action and securities case have commonalities, "the Court has reviewed no compelling authority that convinces it to require Plaintiffs, in this case, to meet the pleading requirements of Federal Rule of Civil Procedure 9(b)").

related determinations, including the appropriate pleading requirement, are unnecessary. This Court, therefore, RECOMMENDS that the District Court ALLOW Lucent's motion for summary judgement.[15]

SO RECOMMENDED.

*July 25, 2008.*

---

**15.** This Court has reviewed Plaintiffs' supplemental brief and finds it to be of no moment. Said brief does not warrant a finding, in any way, inapposite to this Court's decision.